## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANA MARIE DELGADO, ANTONIO LUIS DELGADO ALBERT AND NOEL DELGADO<br><br>Plaintiffs,<br><br>v.<br><br>DORADO HEALTH INC. d/b/a/ MANATÍ MEDICAL CENTER; CONTINENTAL CASUALTY COMPANY; ANESTESIA DEL NORTE, P.S.C, DR. CARLOS SANTIAGO DÍAZ; DR. JUAN F. PEREZ ROSADO, DR. SAMUEL A. AMILL; DR. NESTOR OLIVO; DR. ARMANDO CRUZADO RAMOS; ABC INSURANCE; EFG INSURANCE; JOHN DOE; JAMES ROE; MOE-FOE CONJUGAL PARTNERSHIPS I-X; SINDICATO DE ASEGURADORES PARA LA SUSCRIPCIÓN CONJUNTA DEL SEGURO DE RESPONSABILIDAD PROFESIONAL MÉDICO-HOSPITALARIA ("SIMED"): XYZ INSURANCE | CIVIL NO.  14-1735(   )<br><br>RE:   TORT ACTION FOR MEDICAL MALPRACTICE PURSUANT TO ARTS. 1802 AND 1803, 31 P. R. Laws Ann.  §§ 5141 AND 5142.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**TO THE HONORABLE COURT** :

**APPEAR NOW** the Plaintiffs, ANA MARIE DELGADO, LUIS ANTONIO DELGADO ALBERT and NOEL DELGADO (hereinafter referred to as "Plaintiffs"), through the undersigned counsel, and hereby states, alleges, and requests as follows:

### JURISDICTIONAL BASIS

1.  Plaintiffs are domiciled and residents of the states of Florida and Washington, D.C.

2.  All Defendants are either individuals who reside in Puerto Rico or corporations organized under the laws of the Commonwealth of Puerto Rico with principal place of business in P.R. or of states other than Florida and Washington, D.C.

3.  The matter in controversy exceeds the sum of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), exclusive of interest and costs, thus vesting jurisdiction on this Honorable Court pursuant to 28 U.S.C. § 1332.

### THE PARTIES

4.  Plaintiffs **ANTONIO LUIS DELGADO ALBERT, NOEL DELGADO** AND **ANA MARIE DELGADO** are the sons and daughter (respectively) of patient Luis A. Delgado.

5.  Co- Defendant **DORADO HEALTH, INC., d/b/a MANATÍ MEDICAL CENTER** (hereinafter "**MANATÍ MEDICAL CENTER**","**MMC**" or "**hospital**"), is a corporation duly incorporated and registered in and with  its principal place of business in Puerto Rico.

6.  Co-Defendant **MMC** owns and/or operates a hospital located in Manatí,  Puerto Rico, wherein it provides its patients with a gamut of hospital services and/or hospital care, including emergency, surgery, PACU, ICU, laboratory and other hospital care and services.

7.  Co-Defendant **CONTINENTAL CASUALTY COMPANY**, is a CNA corporation, which insures Dorado Health Inc. D/B/A MANATI MEDICAL for medical, nursing, hospital staff and other personnel for medical malpractice.

8.  Co-Defendant **ANESTESIA DEL NORTE, P.S.C.**, (hereinafter "**ADN**") is a corporation organized and operated under the laws of the Commonwealth of Puerto Rico with its principal office in Puerto Rico.

9.  Co-Defendant **ADN**, owns and/or operates an operating room (O.R.)/surgical room

located in the Manatí Medical Center, wherein it is responsible providing some personnel, equipment and other services for patients that will be intervened surgically.

10.  Co-Defendant **ADN**, owns and/or operates an operating room located in the Manatí Medical Center, wherein it is responsible for the hire and monitoring of the personnel and is responsible for the acquisition, maintenance, sterilization and repairs of surgical equipment as well as preventing contamination of equipment, personnel and patients who seek their services.

11. Co-Defendant **DR. CARLOS SANTIAGO DÍAZ  (**hereinafter **DR. SANTIAGO)** is a surgeon authorized to practice medicine in Puerto Rico, who operated on Luis A. Delgado, performing a laparotomy, lysis of adhesions and reduction of an incarcerated right inguinal hernia.  DR. SANTIAGO also provided the patient with post operative care.

12. Co-Defendant **DR. JUAN PEREZ ROSADO** (hereinafter "**DR. PEREZ**") is a physician who specializes in internal medicine authorized to practice medicine in Puerto Rico, treated Luis A. Delgado while admitted to MMC.

13. Co-Defendant **DR. NESTOR OLIVO** (hereinafter "**DR. OLIVO**") is a physician who specializes in internal medicine authorized to practice medicine in Puerto Rico, and who treated Luis A. Delgado while admitted to MMC.

14. Co-Defendant  **DR.  SAMUEL  A.  AMILL    (**hereinafter  **DR.  AMILL)**  is  a

pulmonary/critical medicine physician authorized to practice medicine in Puerto Rico, who treated Luis A. Delgado while at MMC.

15. Co-Defendant **DR. ARMANDO CRUZADO RAMOS  (**hereinafter **DR. CRUZADO)** is a surgeon authorized to practice medicine in Puerto Rico, who performed surgery on Luis A. Delgado,  and also provided him with post operative care.

16. Co-Defendants **ABC INSURANCE** is/are an entity(ies) or corporation organized or operating under the laws of the Commonwealth of Puerto Rico, with its principal place of business in Puerto Rico or in a state other than Florida and Washington, D.C., which has issued an insurance policy(ies) on behalf of one or more codefendants for the acts or omissions described herein, encompassing the relevant period of time.

17. Co-Defendants unknown joint tortfeasors **JOHN DOE** and **JAMES ROE** are physicians or other health care providers fictitiously named herein, to be later replaced by their actual names which may become known through further discovery in this litigation, and who may be liable to Plaintiffs, in whole or in part, for the actions and/or omissions herein described or later revealed through discovery, encompassing the relevant period of time, and the damages suffered by Plaintiffs.

18. Co-Defendants **MOE-FOE CONJUGAL PARTNERSHIPS I-X** are unknown conjugal partnerships comprised of the individual defendants and their respective husbands and/or wives, who are currently unknown.

19. Co-Defendant **Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Profesional Médico-Hospitalaria** (hereinafter, "

**SIMED** ") is an insurance company organized, existing, and with its principal place of business in Puerto Rico or a state or territory other than Florida and Washington, D.C., which issued insurance policies for medical malpractice on behalf of one or more of the physician Co-Defendants Joint Tortfeasors in this case, for the acts and/or omissions described herein, encompassing the relevant period of time.

20. Co-Defendant **EFG INSURANCE** is/are an entity(ies) or corporation(s) organized or operating under the laws of the Commonwealth of Puerto Rico, with its principal place of business in Puerto Rico or in a state other than Florida and Washington, D.C., which additionally insures all or some of the Co-Defendants Joint Tortfeasors in this case for the acts and/or omissions described herein, encompassing the relevant period of time.

21. Pursuant to 26 P.R. Laws Ann. § 2001, a direct action may be brought in the Commonwealth of Puerto Rico against a casualty or liability insurance carrier for the negligence or fault of its insured.

22. Pursuant to 26 P.R. Laws Ann. § 2003, an action against an insurer may be brought separately or may be joined with an action against its insured.

**GENERAL ALLEGATIONS**

23. On the night of June 24th, 2013, Luis A. Delgado (hereinafter referred to as "Mr. Delgado" or "patient"), 65 years old, started to feel abdominal pain and nausea.

24. On Tuesday, June 25th at approximately 1:00 a.m., his condition worsened as he started vomiting..

25. Mr. Delgado called his brother, Dr. Alberto Delgado, (hereinafter "Dr. Delgado") a physician that works at MMC's emergency department, and conveyed his current state and concern.

26. Sometime after 5:30 a.m., Dr. Delgado picked up his brother Mr. Delgado and took him with him to MMC emergency department to be evaluated and treated.

27. At MCC's ER, physician Dr. Porfiro Franqui Flores provided medical evaluation and care to patient by running some tests and leaving him under observation.

28. Strict NPO (nothing by mouth) was ordered.

29. On June 26th Dr. Franqui Flores diagnosed intestinal obstruction and adhesions and placed a surgical consult to Dr. Carlos Santiago Díaz.

30. Dr. Carlos Santiago Díaz decided to operate on patient and admitted patient to his care.

31. On June 27th at 8:00pm, Mr. Delgado entered the operating room in the Manatí Medical Center and Dr. Carlos Santiago Díaz performed the surgery.

32. Upon conclusion of operation, approximately 10:45pm, Mr. Delgado went to recovery and was transferred to the intensive care unit from the recovery room.

33. In the early afternoon of June 28th Mr. Delgado was transferred to a private room from the intensive care unit.

34. Mr. Delgado's doctors reported to the family that the surgery was successful.

35. The doctors mentioned that as a precaution Mr. Delgado would not be fed any solid food or water until Wednesday of the upcoming week.

36. Once transferred to the a private room he was placed under the care of an internal medicine physician who would continue to manage Mr. Delgado's post-operative treatment along with Dr. Santiago Diaz.

37. Mr. Delgado received and spoke to his visitors in his hospital room.

38. After visiting hours, Mr. Delgado became anxious and was having trouble falling asleep.

39. MMC's nurse reported she had spoken to the physician who instructed her to give him a pill, orally, to help him sleep.

40. The nurse administered the medication orally to patient.

41. Sometime later, Mr. Delgado continued anxious and unable  sleep and the nurse administered additional medication.

42. Mr. Delgado began sweating, became increasingly anxious, restless and continued unable to sleep.

43. The nurses were informed of patient's worsening condition.

44. By the time the nurse came to check on Mr. Delgado, he was extremely anxious and restless and wanted to take off bed covers and get out of the bed and stand up.

45. Nurses contacted Dr. Perez Rosado who provided telephone orders to administer more medication which was carried out by nurses Batista and Pagan.

46. The nurse administered additional medication directly into the IV of Mr. Delgado, to supposedly soothe him, reduce his discomfort and help him sleep.

47. Shortly there after, the patient became disoriented, incoherent and combative.

48. Patient Delgado tried to rip out his IV, tried to stand up and successfully ripped out his nasogastric tube.

49. Alerted by Mr. Delgado's wife, María de los Angeles Albert, five nurses eventually arrived to subdue Mr. Delgado.

50. After a considerable amount of time, the nurses on duty successfully tied Mr. Delgado down, totally restraining him to his bed.

51. On the morning of June 29th, Mr. Delgado was disoriented; his gastrointestinal, neurological and integumentary systems were disrupted.

52. On June 29th, 2013, at 12:51pm, Mr. Delgado suffered respiratory failure.

53.  Mr. Delgado was revived at 1:05 am and eventually had to be intubated.

54. On June 29th, at approximately 1:30pm, Mr. Delgado was transferred to intensive care.

55. The doctors explained to the family that the patient was unconscious, exhibiting high blood pressure, involuntary reflexes/spasms, pneumonia, and swollen in the extremities, among other symptoms.

56. Between the night of June 28th and the morning of June 29th, Mr. Delgado was administered Demerol 50mg combined with Phenergan 2.5mg (x2); Protonix 80mg(x1); Morphine Sulfate 2mg (x1); Lovenox 40mg (x1); Vasotec 2.5mg(x1); Zofran 4mg(x3); Pepcid 20mg(x2); Reglan (oral) 10mg (x1); Restoril 15mg (x1); Zozyn 3.375mg (x1); Ativan 2mg (x1); Haldol 2mg (x1); Benadryl 25mg (x1).

57. Dr. Nestor Olivo (hereinafter referred to as "**Dr. Olivo**") began to treat Mr. Delgado and was his attending physician as of June 30th until July 13th, the date of his death.

58. On June 30th, more tests were performed and the patient remained intubated, with a nasogastric feeding tube, IV and ice packs around Mr. Delgado entire body.

59. Dr. Samuel A. Amill (hereinafter referred to as "Dr. Amill") is a pulmonary/critical care specialist that treated Mr. Delgado.

60. Dr. Amill ran neurological exams to evaluate Mr. Delgado's brain activity.

61. The neurological test revealed that Mr. Delgado had decreased neurological activity.

62. On July 5th,  the neurological exams were repeated and, Mr. Delgado's neurological activity had not improved.

63. On July 6th and July 9th, Dr. Cruzado placed a feeding tube and performed a tracheostomy on Mr. Delgado.

64. On July 10th, Dr. Amill removed Mr. Delgado from his mechanical ventilator.

65. During the patient's hospitalization the equipment at MMC operating room, managed by ADN, had tested positive for MRSA and/or other hospital borne bacteria.

66. Samples were collected and tested which resulted positive for Enterobacter cloacae and Methicillin Resistant Staphylococcus Aureus (MRSA), hospital acquired bacteria.

67. Test results on Mr. Delgado resulted positive for MRSA and/or hospital borne bacteria and pathogens.

68. Mr. Delgado's hospital acquired bacteria further contributed to the respiratory deficiency and/or sepsis and the worsening of his overall medical condition.

69. On July 13, Mr. Delgado while undergoing respiratory therapy, part of his tracheotomy neck equipment got stuck inwards obstructing his airway.

70. Nursing, technical and medical personnel did not clear the airway obstruction in time and Mr. Delgado eventually asphyxiated to death.

71. At approximately 7 am, MMC personnel called Mr. Delgado's family to inform that Mr. Delgado had suffered another cardiopulmonary arrest.

72. Dr. Delgado, was the first to arrive at Manatí Medical Center, and was notified that Mr. Delgado had been declared dead at approximately 8 am and was informed of the circumstances surrounding his death.

**FIRST CAUSE OF ACTION FOR
NEGLIGENCE UNDER ARTICLE 1802 &
1803 OF THE PUERTO RICO CIVIL CODE
MANATÍ MEDICAL CENTER AND ITS
PERSONNEL**

73. The allegations contained above are incorporated by reference as if again fully set forth herein.

74. Manatí Medical Center has emergency, surgery, hospital and intensive care departments within its hospital premises.

75. At the relevant times of this complaint, Manatí Medical Center operated or contracted to operate  emergency, surgery, hospital and intensive care departments within its premises.

76. The hospital sets up policies, procedures and/or requirements for the operation of the  emergency, hospital, surgery, hospital and intensive care departments on its premises.

77. The hospital supplies nursing, clerical, administrative, and technical personnel to the  emergency, hospital, PACU, ICU, and surgery departments.

78. The hospital derives revenue from the services provided to patients, specifically at these departments within its premises.

79. The hospital is liable for medical malpractice occurring at the previously mentioned

hospital departments located on its premises.

80. The treatment offered by Manatí Medical Center to Luis A. Delgado, through its medical, nursing, technical personnel and/or the doctors with privileges who used its facilities, was below the medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching and, as such, directly caused and/or contributed to causing Plaintiffs the untimely death of their beloved father, Luis A. Delgado, and the injuries as described herein.

81. Manatí Medical Center's personnel failed to exercise the care and precautions required under the circumstances in order to prevent the loss of Luis A. Delgado's life, lacked the required knowledge and medical skill, failed to timely have available the personnel and equipment necessary to avoid the injuries and subsequent death of Luis A. Delgado.

82. Manatí Medical Center nursing and medical personnel negligently failed to recognize or otherwise ignored the serious nature of Luis A. Delgado's condition upon displaying anxiety, restlessness and combativeness caused by respiratory insufficiency.

83. MMC nursing and medical personnel continued administering medication that worsened patient Delgado's ability to breath.

84. MMC nurses and medical personnel failed to monitor and determine the cause of the patient's increasing anxiety, restlessness, combativeness, disorientation but instead opted to restrain him to his bed.

85. MMC nurses and medical personnel failed to provide the respiratory assistance that

Mr. Delgado needed thereby causing him to experience a hypoxic event which severely affected his brain function.

86. While at MMC's intensive care unit, Mr. Delgado was inadequately monitored leading to a hypoxic event.

87. MMC failed to ensure that Mr. Delgado would not acquire a MRSA or other hospital acquired bacteria or pathogen while being cared on premises.

88. MMC failed to ensure that the surgical room and equipment was not contaminated, but bacteria free before exposing Mr. Delgado its surgical equipment or facilities.

89. MMC failed to ensure that ADN provided adequate care and prevent patients using the operating room from being infected by contaminated equipment.

90. MMC provided respiratory therapy and nursing personnel who negligently failed to adequately treat the patient with a recent tracheostomy but instead caused it to become dislocated thus obstructing the patient's air path and then failing to timely clear the air path.

91. MMC provided nursing and therapy personnel that failed to provide adequate care and prevent aspiration pneumonia and protect patient's airway from secretions.

92. MMC provided respiratory therapy personnel who negligently permitted patient's airway to become obstructed and could not timely clear the air path.

93. At all times herein pertinent, co-Defendant Manatí Medical Center, its directors, officers, and  employees were negligent in failing to provide the proper medical attention to Luis A. Delgado, in failing to provide the proper supervision of co-Defendants Dr. Carlos Santiago Díaz, Dr. Juan Perez Rosado, Dr. Nestor Olivo, Dr. Cruzado and Dr. Samuel A. Amill and as well as the medical personnel Manatí

Medical Center employs, and otherwise failing to exercise due care and caution to prevent the tortious conduct and injuries to Plaintiffs and to Luis A. Delgado.

94. Manatí Medical Center, not only failed to adequately supervise the Defendant physicians and/or ensure their prompt attention to patient, but permitted the use of its facilities, allowing, encouraging, and condoning the negligent care and improper treatment of Luis A. Delgado, proximately and directly causing Plaintiffs' injuries.

95. Manatí Medical Center offered medical services to its patients, but failed to staff its hospital with the medical personnel and equipment necessary to timely, appropriately, and safely treat its patients and ensure prompt and adequate medical attention.

96. In so doing, Manatí Medical Center misled those who sought full hospital treatment into thinking that they would be appropriately treated.

97. Manatí Medical Center did not provide the timely services of persons capable of properly and effectively coordinating its departments.

98. As a direct and proximate result of Manatí Medical Center's lack of supervision and failure to staff its emergency, surgical and intensive care departments with the medical personnel and personnel in charge of coordinating and communicating vital information necessary to appropriately treat emergency situations at Manatí Medical Center, Manatí Medical Center and its personnel negligently caused Plaintiffs the untimely death of their father and the injuries as described herein.

99. As a direct and proximate cause of co-Defendant Manatí Medical Center and its personnel's failure to properly treat Luis A. Delgado, Plaintiffs sustained severe pain and suffering and other damages, as described below.

**SECOND CAUSE OF ACTION FOR**
**NEGLIGENCE UNDER ARTICLE 1802 &**
**1803 OF THE PUERTO RICO CIVIL CODE**
**ANESTESIA DEL NORTE, P.S.C.**

100.     The allegations contained above are incorporated by reference as if again fully set forth herein.

101.     At the relevant times of this complaint, Anestesia del Norte, P.S.C., "ADN", operated the surgical/operating room(s) in Manatí Medical Center.

102.     Anestesia del Norte, P.S.C. sets up policies, procedures and/or requirements for the operation of the surgical room(s).

103.     Anestesia del Norte, P.S.C. supplies nursing, clerical, administrative, and technical personnel to the operating room.

104.     Anestesia del Norte, P.S.C. derives revenue from the services provided at and by the operating/surgical room.

105.     Anestesia del Norte, P.S.C. is liable for medical malpractice occurring at the operating/surgical room.

106.     The treatment offered by Anestesia del Norte, P.S.C. to Luis A. Delgado, through its medical,  nursing, technical personnel and/or the doctors with privileges who used its facilities, was below the medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching and, as such, directly caused and/or contributed to causing Plaintiffs the untimely death of their beloved father, Luis A. Delgado, and the injuries as described herein.

107.     Anestesia del Norte, P.S.C.'s personnel failed to exercise the care and

precautions required under the circumstances in order to prevent the contamination and infection causing ventilator acquired pneumonia (VAP) and/or sepsis which contributed to Luis A. Delgado's demise when it failed to properly sanitize and sterilize non-disposable medical equipment, which was used during Luis A. Delgado's surgeries, to prevent the infection and subsequent death of Luis A. Delgado.

108.     Anestesia del Norte, P.S.C. failed to ensure that Mr. Delgado would not be exposed to OR personnel or equipment and/or acquire a MRSA or other hospital acquired bacteria or pathogen while being cared on premises.

109.      Anestesia del Norte, P.S.C. failed to ensure that the surgical room and equipment was not contaminated, but bacteria free before exposing Mr. Delgado its surgical equipment or facilities.

110.     Anestesia del Norte, P.S.C. failed to ensure the proper medical and technical care of Luis A. Delgado by its operating room staff and equipment.

111.     At all times herein pertinent, co-Defendant Anestesia del Norte, P.S.C., its directors, officers, and  employees were negligent in failing to provide the proper equipment sanitization, in failing to provide the proper supervision of the personnel in charge of the equipment, as the medical personnel Anestesia del Norte, P.S.C. employs, and otherwise failing to exercise due care and caution to prevent the tortious conduct and injuries to Plaintiffs and to Luis A. Delgado.

112.     Anestesia del Norte, P.S.C., not only failed to adequately supervise its employees, but permitted the use of its facilities, allowing, encouraging, and condoning the negligent care and improper treatment of Luis A. Delgado,

proximately and directly causing Plaintiffs' injuries.

113.     Anestesia del Norte, P.S.C. offered medical services to its patients, but failed to staff its operating room with the medical personnel and sterilized equipment necessary for procedures and caused Mr. Delgado to become infected with a MRSA and/or operating room bacteria or pathogen aggravating further his condition and contributing to his eventual death.

114.     In so doing, Anestesia del Norte, P.S.C. misled those who sought full and safe surgical treatment into thinking that they would be appropriately treated at the operating room.

115.     As a direct and proximate result of Anestesia del Norte, P.S.C.'s lack of supervision and failure to staff its operating room with the medical personnel and personnel in charge of coordinating and communicating vital information necessary to appropriately treat surgery situations at Anestesia del Norte, P.S.C., Anestesia del Norte, P.S.C.  and its personnel negligently caused Plaintiffs the untimely death of their father and the injuries as described herein.

116.     As a direct and proximate cause of co-Defendant ADN and its personnel's failure to properly treat Luis A. Delgado, Plaintiffs sustained severe pain and suffering and other damages, as described below.

### THIRD CAUSE OF ACTION
### FOR NEGLIGENCE UNDER ARTICLES 1802 & 1803 AGAINST  PHYSICIANS
### DR. CARLOS SANTIAGO DÍAZ, DR. JUAN PEREZ ROSADO, DR. NESTOR OLIVO AND
### DR. SAMUEL A. AMILL AND DR. ARMANDO CRUZADO

117.     The allegations contained above are incorporated by reference as if again fully set forth herein.

16

118.     Co-Defendants Dr. Santiago, Dr. Pérez, Dr. Olivo, Dr. Amill and Dr. Cruzado's intervention with Luis while he was at Co-Defendant Manatí Medical Center was below the medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching and, as such, directly caused and/or contributed to causing the premature death of Luis and, thus, the pain and suffering of Plaintiffs, as described herein.

119.     Co- Defendant, Dr. Santiago Diaz, Dr. Perez, Dr. Olivo, Dr. Amill and Dr. Cruzado failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to closely observe the postoperative care of Luis for respiratory decompensation, for overmedicating patient, for delay that resulted in transferring Mr. Delgado Rodriguez to the ICU, delay in providing breathing/oxygenation, and failing to protect patient's airway among other negligent acts.

120.      Co- Defendant, Dr. Santiago Diaz and Dr. Pérez Rosado failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to examine, evaluate their patient and administered by telephone medication that interfered with Luis' respiratory insufficiency, among other negligent acts.

121.     Co- Defendant, Dr. Santiago Diaz and Pérez Rosado failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to examine and monitor the patient before ordering medication that would

worsen his condition. Instead he ordered by telephone medication that eventually led to Luis having a hypoxic event.

122.    Co- Defendant, Dr. Santiago Diaz, Dr. Pérez Rosado, Dr. Olivo, Dr. Amill and Dr. Cruzado and the hospital's nursing and technical staff failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to provide close medical attention and monitoring, including but not limited to promptly provide, breathing and ventilation/oxygenation, among other negligent acts..

123.    Co-Defendant, Dr. Amill and Dr. Cruzado failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to provide the proper transition from mechanical ventilation to "T-Piece" blow by ventilation, which was not performed at the standard of care.

124.    Co-Defendant, Dr. Amill and Dr. Cruzado failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when he failed to ensure and protect the patient's airways from secretions given that he had suffered a neurological insult and had a nasogastric tube inserted.

125.    Co-Defendant, Dr. Amill and Dr. Cruzado failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they immaturely placed or allowed it to be placed in patient under trial of "T-piece",

18

thereby exposing patient to dislocation of the tracheostomy  among other negligent acts.

126.    Co-Defendants Dr. Santiago, Dr. Pérez, Dr. Olivo, Dr. Amill and Dr. Cruzado failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to promptly treat the patient's symptoms, monitor and re-evaluate Luis' deteriorating condition.

127.    Co-Defendants Dr. Santiago, Dr. Pérez, Dr. Olivo, Dr. Amill and Dr. Cruzado negligently failed to timely and appropriately provide adequate medical care to Luis.

128.    Co-Defendants Dr. Santiago,  Dr. Pérez, Dr. Olivo, Dr. Amill and Dr. Cruzado negligently and carelessly failed to treat the patient in an organized, competent manner and within the acceptable standard of care.

129.    As a direct and proximate cause of Co-Defendants Dr. Santiago, Dr. Pérez, Dr. Olvio, Dr. Amill and Dr. Cruzado's actions and omissions upon being presented with a patient in Luis' condition and with his clinical signs, Luis was deprived of an opportunity to be promptly treated when time was of the essence and the Plaintiffs, through the premature death of Luis, were deprived of his companionship camaraderie, support and love.

130.    In so doing, Co-Defendants Dr. Santiago, Dr. Pérez, Dr. Olivo, Dr. Amill and Dr. Cruzado committed professional negligence, including lack of expertise, fault and malpractice, which directly and proximately caused the death of Luis as detailed herein.

**FOURTH CAUSE OF ACTION**
**FOR NEGLIGENCE UNDER ARTICLES 1802 & 1803**
**OF THE PUERTO RICO CIVIL CODE**
**CONTINENTAL CASUALTY COMPANY**

131.     The allegations contained above are incorporated by reference as if again fully set forth herein.

132.     Co-Defendant Continental Casualty Company was at all times herein pertinent as an insurance company authorized to do business in the Commonwealth of Puerto Rico and which issued a public liability and/or malpractice insurance policy on behalf of Co-Defendant, Manatí Medical Center.

133.     Pursuant to 26 P.R. Laws Ann. § 2001, an insurance company is liable for the negligence or fault of its insured.

134.     Pursuant to 26 P.R. Laws Ann. § 2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

135.     Therefore, Co-Defendant Continental Insurance Company is jointly and severally liable to all Plaintiffs for the damages caused to them by Co-Defendant Manatí Medical Center.

**FIFTH CAUSE OF ACTION**
**FOR NEGLIGENCE UNDER ARTICLES 1802 & 1803**
**OF THE PUERTO RICO CIVIL CODE**
**AGAINST ABC INSURANCE**

136.     The allegations contained above are incorporated by reference as if again fully set forth herein.

137.     Co-Defendant ABC Insurance was at all times herein pertinent an insurance company authorized to do business in the Commonwealth of Puerto Rico and which

issued a public liability and/or malpractice insurance policy on behalf of one or more Co-Defendants.

138.      Pursuant to 26 P.R. Laws Ann. § 2001, an insurance company is liable for the negligence or fault of its insured.

139.      Pursuant to 26 P.R. Laws Ann. § 2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

140.      Therefore, Co-Defendant ABC Insurance Company is jointly and severally liable to all Plaintiffs for the damages caused to them by one or more Co-Defendants.

**SIXTH CAUSE OF ACTION**
**FOR NEGLIGENCE UNDER ARTICLES 1802 & 1803**
**OF THE PUERTO RICO CIVIL CODE**
**AGAINST JOHN DOE AND JAMES ROE UNKNOWN JOINT TORTFEASORS**

141.      The allegations contained above are incorporated by reference as if again fully set forth herein.

142.      Co-Defendants John Doe and James Roe are so designated for lack of knowledge at this point in the proceedings.

143.      Co-Defendants John Doe and James Roe's intervention in the nursing, technical or medical care of Luis while at Co-Defendant Manatí Medical Center was below the nursing, technical and medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching and, as such, directly caused and/or contributed to causing Luis's death and, thus, the pain and suffering of all Plaintiffs upon his premature death, as described herein.

144.      Co-Defendants John Doe and James Roe negligently and carelessly, breaching the medical standard that satisfies the exigencies generally recognized by the

medical profession in light of the modern means of communication and teaching, failed to perform a complete, thorough and adequate medical examination of Luis, commensurate with his reported symptoms, and, as such, directly caused and/or contributed to causing his premature death and the pain and suffering such death caused upon the Plaintiffs.

145.     Co-Defendants John Doe and James Roe negligently and carelessly failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to correctly and promptly recognize the patient's symptoms condition and, thus, failed to provide a prompt, complete, thorough and adequate emergency medical evaluation.

146.     Co-Defendants John Doe and James Roe negligently and carelessly failed to promptly examine, evaluate and treat Luis, delaying his thorough examination and the provision of essential treatment.

147.     Co-Defendants John Doe and James Roe failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to correctly and promptly recognize and treat the patient's symptoms and condition and, thus, failed to provide adequate medical evaluation and treatment.

148.     Co-Defendants John Doe and James Roe failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to provide Luis with appropriate treatment, but instead allowed medication  lack of

respiratory assistance and other negligent acts that worsened his condition and further damages.

149.      Co-Defendants John Doe and James Roe negligently and carelessly failed to provide proper care of their patient, Luis, by failing to engage in his examination, evaluation of symptoms and care on a timely basis.

150.      As a direct and proximate cause of Co-Defendants John Doe and James Roe's negligent actions and omissions upon being presented with a patient in Luis' condition and with his clinical signs, Luis was deprived of the opportunity to be promptly treated when time was of the essence and the Plaintiffs, through the premature death of Luis, were deprived of his companionship, camaraderie, support and love.

151.      In so doing, Co-Defendants John Doe and James Roe committed professional negligence, including lack of expertise, fault and malpractice, which directly and proximately caused the death of Luis A. Delgado's, as detailed herein.

152.      As a direct and proximate cause of Co-Defendants John Doe and James Roe' s negligence in failing to properly treat Luis, Plaintiffs sustained severe pain and suffering upon the loss of their loved one.

### SEVENTH CAUSE OF ACTION AGAINST
### THE CONJUGAL PARTNERSHIPS

153.      The allegations contained above are incorporated by reference as if again fully set forth herein.

154.      Upon information and belief, some of the defendant doctors were married without marriage capitulations during the events described in this complaint.

155.     The activities by which the individual defendant doctors caused Plaintiffs' damages were activities that benefited their respective conjugal partnerships, referred to herein as Doe-Roe Conjugal Partnerships I-X, as Plaintiff lacks information as to the actual names of the respective wives and/or husbands.

156.     As such, each conjugal partnership is jointly and severally liable to Plaintiff for the damages caused by the individual physician Defendants.

**EIGHTH CAUSE OF ACTION
AGAINST SIMED**

157.     The allegations contained above are incorporated herein by reference as if again fully set forth herein.

158.     Co-Defendant SIMED was at all times herein pertinent, an insurance company authorized to do business as such in the Commonwealth of Puerto Rico which issued a public liability and/or malpractice insurance policy on behalf of one or more of the Co-Defendants.

159.     Pursuant to 26 P.R. Laws Ann. § 2001, an insurance company is liable for the negligence or fault of its insured.

160.     Pursuant to 26 P.R. Laws Ann. § 2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

161.     Therefore, Co-Defendant SIMED is jointly and severally liable to Plaintiffs for the damages caused to them by any and/or all physician Co-Defendants.

**NINTH CAUSE OF ACTION
AGAINST EFG INSURANCE**

162.     The allegations contained above are incorporated herein by reference as if again fully set forth herein.

163.    Co-Defendant EFG Insurance was at all times herein pertinent an insurance company or entity authorized to do business in the Commonwealth of Puerto Rico and which issued a public liability and/or malpractice insurance policy on behalf of one or more of the Co-Defendants or unknown joint tortfeasors.

164.    Pursuant to 26 P.R. Laws Ann. § 2001, an insurance company is liable for the negligence or fault of its insured.

165.    Pursuant to 26 P.R. Laws Ann. § 2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

166.    Therefore, Co-Defendant EFG Insurance Company is joint and severally liable to all Plaintiffs for the damages caused to them by any and/or all Co-Defendants, joint tortfeasors.

## DAMAGES

167.    The allegations contained above are incorporated herein by reference as if again fully set forth.

168.    Patient Luis A. Delgado was the father of plaintiffs **ANTONIO LUIS DELGADO ALBERT, NOEL DELGADO AND ANA MARIE DELGADO,** whom they loved dearly**.**

169.    Patient Luis Delgado was an attorney at law, an entrepreneur, family leader, political leader, who set and inspired by example for them. From his very humble origins at Utuado Puerto Rico, he studied, became a University of Puerto Rico professor, and became an attorney at law. As an attorney he fought for social causes, an even addressed the United Nations on issues on Puerto Rico. Delgado always was above all an exceptional father that would share and provide support, counseling and moments to his sons and daughter.

170.     As a result of the professional negligence, lack of expertise, fault, and malpractice of all Co-Defendants, Plaintiffs unnecessarily and prematurely lost their father and exemplary and outstanding person, Luis.

171.     As a result of the professional negligence, lack of expertise, fault, and malpractice of all Co-Defendants, Plaintiffs lived through the extraordinary pain and suffering of seeing their dearly loved Luis suffer, deteriorate and die an untimely death at the relatively young age of 65.

172.     In losing Luis, Plaintiffs **ANTONIO LUIS DELGADO ALBERT, NOEL DELGADO AND ANA MARIE DELGADO** lost their treasured father, a lifelong friend, a formidable pillar of their family and a dear confidant.

173.     Plaintiffs **ANTONIO LUIS DELGADO ALBERT, NOEL DELGADO AND ANA MARIE DELGADO** have suffered dearly the loss of their father, with whom they will not be able to share the special moments of their lives and those of their growing families.

174.     Plaintiffs **ANTONIO LUIS DELGADO ALBERT, NOEL DELGADO AND ANA MARIE DELGADO** quality of life have been severely and permanently eviscerated as a result of their father's death.

175.     Plaintiffs **ANTONIO LUIS DELGADO ALBERT, NOEL DELGADO AND ANA MARIE DELGADO** were very close to their father and will never have his company, counsel or love for the rest of their lives.

176.     As a direct and proximate result of the negligence of all Defendants, Plaintiffs will continue to suffer the irreparable loss of Luis and their quality of life will continue to be severely affected for the rest of their lives.

177.     As a direct and proximate result of the negligence of all Defendants, Mr. Luis A. Delgado, suffered in agony, by asphyxiation and, eventually, a painful and untimely death, a cause of action which Plaintiffs inherit as Mr. Luis A. Delgado's heirs under Puerto Rico law.

178.     Patient **LUIS A. DELGADO's** due to this highly negligent hospitalization, treatment suffered immensely. Delgado was fine before entering the hospital apart for the ailment that certainly was not mortal; he was a very active person, intellectually and socially.  The highly negligent medical treatment provided by all co-defendants caused Delgado immense pain and suffering. His health took a downshift for the worse, and deep anxiety and pain was suffered by Delgado in anticipation to his ultimate negligent death.  Delgado, was subjected to pills despite been ordered no solids, suffered bacterial infection, pneumonia, was subject to dangerous controlled substances prescribed by doctors over the telephone without examining him physically, his desperation was such that at one time he even turned aggressive. When he was transferred to the Intensive Care Unit, he was left without oxygen, to the point of suffocation.  By then, this bright, self-made attorney, father, friend and family leader suffered irreparable brain damage.  After no hope was left for him, and while the family was reviewing their alternatives, another hospital negligence led to the patient suffocating until he died. Mr. Delgado's own horrible pain and suffering, as a father, family provider and family patriarch has a reasonable

value of no less than **ONE MILLION DOLLARS ($1,000,000.00)**.

179.     The acts and omissions of the Defendants have caused Plaintiff **ANTONIO LUIS DELGADO ALBERT** a terrible loss, intense, emotional pain and suffering, frustration and a grave sense of injustice equal to a sum not less than **ONE AND A HALF MILLION DOLLARS ($1,500,000.00)**.

180.     The acts and omissions of the Defendants have caused Plaintiff **ANA MARIE DELGADO** a terrible loss, intense emotional pain and suffering, frustration and a grave sense of injustice equal to a sum not less than **ONE AND A HALF MILLION DOLLARS ($1,500,000.00)**.

181.     The acts and omissions of the Defendants have caused Plaintiff **NOEL DELGADO** a terrible loss, intense emotional pain and suffering, frustration and a grave sense of injustice equal to a sum not less than **ONE AND A HALF MILLION DOLLARS ($1,500,000.00)**.

182.     The acts and omissions of the Defendants have caused **NOEL DELGADO**, who suffers from multiple sclerosis and who depended on his father for his treatment, loss of income, economic support, loss of services and other economic damages of no less than **ONE MILLION DOLLARS ($1,000,000.00)**.

**TRIAL BY JURY DEMANDED**

183.     Plaintiffs demand trial by jury on all causes of action herein raised.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against all Defendants jointly and severally, in an amount not less than **6.5 MILLION DOLLARS ($6,500,000.00)**, as well

as costs incurred, reasonable attorneys' fees, and such other and further relief as this Honorable Court may deem just and proper under the law.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 26th day of September, 2014.

INDIANO & WILLIAMS, P.S.C.
Attorneys for Plaintiff
207 del Parque Street, Third Floor
San Juan, Puerto Rico 00912
Tel: (787) 641-4545; Fax: (787) 641-4544
jeffrey.williams@indianowilliams.com
david.indiano@indianowilliams.com
vanesa.vicens@indianowilliams.com


BY: *s/ Jeffrey M. Williams*
    JEFFREY M. WILLIAMS
    USDC PR Bar No. 202414


BY:    *s/ David C. Indiano*
    DAVID C. INDIANO
    USDC PR Bar No. 200601

    *s/Vanesa Vicens Sanchez*
    VANESA VICENS SANCHEZ
    USDC PR Bar No. 217807