IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANA MARIE DELGADO, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> DORADO HEALTH INC., ET AL., <br><br> Defendants. | CIV. NO.: 14-1735(PAD) |

**REPORT AND RECOMMENDATION**

In this medical malpractice suit co-defendants seek to exclude plaintiffs' expert, Dr. Carl Warren Adams, on a *Daubert* challenge. Docket Nos. 179 and 183. Co-defendants Carlos Santiago Díaz, Armando Cruzado and SIMED, withdrew their requests, Docket Nos. 229, 230 and 231, after partial judgment was entered as to co-defendant Samuel Amill.[1] Docket No. 223.

---

1. Amill had been the first party to move for exclusion, Docket No. 177, and the other co-defendants had joined in his request.

| DELGADO v. DORADO HEALTH | Page 2 |
|---|---|

The parties that kept the challenge, Dorado Health Inc., and its insurer, Continental Insurance Company, and the plaintiffs filed briefs and a hearing followed. For the reasons set forth below I now recommend that the motions be denied.

### I. Factual Background

Plaintiffs filed suit for the death of their father at the Manati Medical Center. They claim that his death was untimely and the result of defendants' negligent acts and deviations from the proper standard of care. In support of plaintiffs' claims Dr. Adams rendered three reports, the original one dated July 2nd, 2015, a Rebuttal Report and a Supplemental Report. All three reports are being challenged. Docket No. 242, Exhibits 3-A through 3-C.

### II. The Daubert Challenge

The two challenges before the Court are that Dr. Adams' opinion is not properly substantiated with medical literature and that he did not properly review the medical record, on which he admittedly based his opinion, because he is not fluent in Spanish and did not procure a translation.[2] Plaintiffs counter

---

2. Continental's Motion in Limine focused only on Dr. Adams' lack of citations to textbooks or treatises as the reason for excluding his testimony. Docket No. 179. Dorado Health's motion in limine, on the

| DELGADO v. DORADO HEALTH | Page 3 |
|---|---|

that Dr. Adams' training, qualifications and experience provide a solid basis for his expert opinion, lack of citations notwithstanding. They also state that Dr. Adams reviewed the relevant portions of the medical record, most of which happens to be in English, and that his basic knowledge of Spanish and medical terminology allowed him to conduct the needed inspection to render his reports.

**III. The Standard**

"The touchstone for the admission of expert testimony in federal court litigation is Federal Rule of Evidence 702." *Crowe v. Marchand*, 506 F.3d 13, 17 (1st Cir.2007). Fed. R. Evid. 702 incorporated the holding in *Daubert v. Merrell Dow*, 509 U.S. 579 ( 1993) and its progeny. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by

---

other hand, focused on two other issues: (1) that Dr. Adams' opinion as to any deviation in the standard of care of the nursing staff was unreliable and; (2) that Dr. Adams only did a cursory review of the medical record. Docket No. 183. The challenge to the actions of the nursing staff was excluded from the Daubert Hearing as per Docket No. 238. Even though each raised different grounds for challenging Dr. Adams' testimony on their motions in limine, both Continental and Dorado presented their challenges in unison at the hearing. Therefore, I will discuss their arguments jointly.

knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed.R.Evid. 702.

"Rule 702 has been interpreted liberally in favor of the admission of expert testimony." *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir.2006). In that sense, the Court is the ultimate gatekeeper of pertinent, reliable expert testimony. *Pages-Ramirez v. Ramirez-Gonzalez*, 605 F.3d 109, 113 (1st Cir. 2010). In determining whether to admit expert evidence, the trial court must determine whether the expert is "sufficiently qualified to assist the trier of fact," whether the testimony is relevant, and whether it "rests on a reliable basis." *Daubert*, 509 U.S. at 597.

A trial court may take into account one or more of the specific factors discussed in *Daubert* to determine reliability: (1) whether the expert's technique or theory has been tested; (2) whether the technique or theory has been subjected to peer-review and publication; (3) the known or potential rate of error applicable to the technique or theory; (4) the existence of standards and controls applicable to the technique or theory;

| DELGADO v. DORADO HEALTH | Page 5 |
|---|---|

and (5) whether the technique or theory is generally accepted in the scientific community. *Daubert*, 509 U.S. at 588. But, since the test is "flexible," the Court may well rely on other criteria to determine reliability and enjoys "broad latitude" in those endeavors. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999).

**IV. Analysis**

Dr. Adams testified by video. After major scheduling issues a video conference was agreed upon. At the onset of the hearing, it was established that the burden of proof rests on the proponent of the expert testimony, who must meet the *Daubert* threshold by a preponderance of the evidence. *See United States v. Monteiro*, 497 F. Supp. 2d 351, 356 (D. Mass. 2006). The challenge to Dr. Adams' opinion rests on two main issues, which I will address separately.

**1. Lack of citations to medical literature**

As is customary in *Daubert* hearings, the proponent of the testimony conducts the direct examination. Thus, in this case, plaintiffs set the stage by questioning Dr. Adams extensively as to his education, professional background and experience as expert witness in other cases. I will not transcribe here his miles-long resume, which has been made part of the record,

| DELGADO v. DORADO HEALTH | Page 6 |
|---|---:|

Plaintiff's Exhibit 1, except to highlight that Dr. Adams unquestionably possesses the qualifications to testify as an expert witness in surgical pulmonology and post-operative care.[3]

Defendants, however, do not challenge Dr. Adams' general qualifications as an expert, their challenge is targeted to his particular conclusions in this case, which defendants claim are not substantiated with specific references to treatises on standards of care, textbooks or articles. Dr. Adams admitted that he did not make such citations, but argued that he did not need to do so because the deviations from the standard of care that he pointed out in his reports are elemental principles taught during basic medical training that should be obvious to anyone who finished medical school.[4] Most importantly, said

---

3. It is worth noting that Dr. Adams testified to only being sued once for malpractice in his entire career, a fact that was not contested by defendants.

4. To support this claim, plaintiffs asked Dr. Adams to go over his specific conclusions regarding the deviations from the standard of care in the treatment provided by Drs. Carlos Santiago, Pérez Rosado, Néstor Olivo and Armando Cruzado. I deem it unnecessary to recount that portion of the testimony here, insofar as it is not essential for the purpose of ruling on the *Daubert* challenge. When a particular matter regarding an expert's opinion "goes to the weight, not the admissibility,

| | |
|---|---:|
| DELGADO v. DORADO HEALTH | Page 7 |

Dr. Adams, his opinions are based on his own training, qualifications and experience, which are dictated, in part, by what he has learned and incorporated from medical treatises and journals that he employed during his education and, later on, his continuing education. On that last subject, Dr. Adams stated that he has to comply with numerous continuing education requirements to maintain his board certifications and those requirements involve reading articles and peer-reviewed publications. Therefore, it could be said that Dr. Adams' position is that the wealth of knowledge he has accumulated, be it through education or experience, necessarily incorporates the standards of care that are laid out in medical books. And that by rendering his opinion, he is implicitly citing to those publications though he does not spell out their names.

As a final note, Dr. Adams recalled that he did, in fact, provide an article about the standard of care for stay sutures after one of defendants' experts said that he had never heard

---

of his testimony," the question is best left to the jury to resolve. *U.S. v. Perocier*, 269 F.R.D. 103, 107 (quoting *United States v. Vargas*, 471 F.3d 255, 264 (1st Cir. 2006)).

| DELGADO v. DORADO HEALTH | Page 8 |
|---|---:|

of such a procedure.[5]

Where, as here, the testimony's factual basis, data, principles, or methods are called into question, "the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline," *Kumho*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). However, the trial court need not dwell on whether the "factual underpinnings of an expert's opinion" are "weak" because such determinations of credibility must be resolved by the jury. *Vargas*, 471 F.3d at 264.

To determine the reliability of Dr. Adams' testimony, the Court turns to the Advisory Committee Notes to Rule 702 of the Rules of Evidence, which state, in pertinent part, that "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience."[6] *See also Kumho*, 526 U.S. at 156 (stating that "no one denies that an expert might draw a

---

5. Dr. Adams also mentioned two articles during his deposition, but did not include them in his reports.

6. The notes further state: "Nothing in this amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony."

| DELGADO v. DORADO HEALTH | Page 9 |
|---|---|

conclusion from a set of observations based on extensive and specialized experience.") But if the expert is "relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Advisory Committee's Notes on Fed. R. Evid. 702.

Here, Dr. Adams explained how his experience and education led to the conclusion that there were deviations from the standard of care in the treatment of Mr. Delgado. Dr. Adams illustrated how, in forming his opinion, he relied on the medical record and on his years of training, education and expertise in performing a tracheostomy and handling the post-operative care of his patients.[7] Moreover, the doctor described how his vast experience inextricably integrates the medical standards set forth in numerous textbooks and treatises.[8]

After hearing Dr. Adams' testimony, I conclude that his

---

7. Dr. Adams stated that he has handled the post-operative care in all of the over 4000 operations that he has performed during his career. He also calculated that he has performed at least 1000 tracheostomies.

8. It is worth noting that defendants have not alleged that the concepts or facts upon which Dr. Adams relied are not widely accepted in the medical profession.

DELGADO v. DORADO HEALTH                                                    Page 10

failure to cite to peer-reviewed articles or treatises on his reports is not a basis for excluding his opinion under *Daubert*. Other courts that have grappled with the issue, have taken the same stance. *See, Jones v. Black*, 145 So.3d 402, 416 (La.App. 1 Cir. 5/12/14)(Trial court abused its discretion in excluding testimony of plaintiff' expert witness based upon his failure to present peer-reviewed medical literature or studies to support his opinion); *Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994) (Where expert's opinion was based on thirty years of experience as a practicing, board-certified cardiologist, and on his review of the medical records and the coroner's records, the court found his testimony was "grounded in the methods and procedures of science" and was not mere "unsupported speculation". The court reached that conclusion even though the expert did not cite to a particular source as the exclusive authority on endocarditis); *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 155 (3rd Cir. 1999)(Finding that in light of the flexible nature of the *Daubert* inquiry and the Federal Rules of Evidence, a medical expert does not need to "always cite published studies on general causation in order to reliably conclude that a particular object caused a particular illness.")

At the hearing, Defendants also went over the

non-exclusive list of *Daubert* factors and thereupon, concluded that Dr. Adams' testimony did not wholly comply. Nevertheless, as the *Kumho* court warned, the test of reliability is "flexible" and courts are called upon to consider *Daubert* factors to the extent relevant. *Kumho*, 526 U.S. at 141. The ultimate goal of these considerations, as we have previously expressed, is to assist the trier of fact in understanding the evidence. *See* Rule 702. Where, as here, the opinion concerns a particular treatment, the court finds that the expert's knowledge about the standard of care based upon his experiences is a more "reasonable measure" of reliability than some of the *Daubert* factors.[9] *Kumho*, 526 U.S. at 152; *Sullivan v. United States Department of Navy*, 365 F.3d 827, 834 (9th Cir. 2004) (citing *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000))(Since the expert testimony if based on specialized, rather than scientific knowledge, "the *Daubert* factors are not intended to be exhaustive or unduly restrictive.")

---

9.   In fact, determining the standard of care in medical malpractice cases is an exercise that's as much informed by personal experience, as it is by hard scientific evidence, if not more. Harvey Brown, *Eight Gates for Expert Witnesses*, 36 Hous. L. Rev. 743, 831-836 (1999)(discussing how testimony on the standard of care is derived, in great part, from personal experience).

### 2. Inadequate review of medical record

Defendants' second objection is that Dr. Adams' lack of fluency in Spanish rendered him unable to conduct a thorough review of the medical record, which is over 2000 pages long. Defendants also questioned Dr. Adams regarding the amount of time it took him to analyze the record and render his report, suggesting that he only did it in 5 hours, an impossible feat.

Though Dr. Adams admitted that he is not fluent, he testified that he could "understand the flow of the medical record" and was able to "follow the trail" of the numerous entries.[10] Furthermore, he averred that he reviewed the portions that he deemed necessary, not the entirety of the record. For example, he did not review the nutritional records or the physical therapy records, but he did review the doctors' notes and all the medical notes.

I conclude that Dr. Adams' perusal of the record was swift but remain unconvinced that such a conclusion warrants exclusion of his reports and testimony under *Daubert*.

Finally, defendants also suggested that Dr. Adams improp-

---

10. To be able to fully grasp defendants' arguments, and since the medical record in question was not part of the case's filings, the court asked the parties for a copy during the hearing to conduct an independent review. I noticed that it was mostly in English, except for the nursing staff's notes.

| DELGADO v. DORADO HEALTH | Page 13 |
|---|---|

erly based his review on a summary of the medical record prepared by the lawyers, rather than on the record itself.[11] Dr. Adams, however, categorically averred that he based his opinion on his review of the medical record, not the summary, and since he did not consider it to be important, he did not even list it in his report. I find that this explanation suffices and thus, I will not dwell on this issue.

**V. Conclusion**

After performing my role as ultimate gatekeeper of expert evidence that is pertinent and reliable, and taking into account the liberal nature of Rule 702 and the *Daubert* factors, I find that Dr. Adams' reports fulfill both requirements and meet the *Daubert* threshold. Therefore, I recommend that the Court deny the two Motions in Limine at Docket Nos.179 and 183.

**IT IS SO RECOMMENDED.**

The parties have seven days to file any objections to this report and recommendation. The usual time of fourteen days has been shortened because this issue has been pending for too long due to the delays caused by the scheduling disputes. Failure to file the objections within the specified time waives the right to appeal this report and recommendation. Henley

---

11. Defendants vehemently argued for the production of the summary, since plaintiffs had refused to provide it during discovery claiming it was covered by the attorney work-product doctrine. After the Court ordered that it be produced, it turned out that the narrative was written by an unidentified family member.

| DELGADO v. DORADO HEALTH | Page 14 |
|---|---|

Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 2nd day of September, 2016.

<u>S/ SILVIA CARREÑO-COLL</u>
UNITED STATES MAGISTRATE JUDGE